# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JASPER WOOD PRODUCTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 13-0407-WS-C |
| | ) | |
| JORDAN SCRAP METAL, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on Plaintiff's Motion for Leave to File Amended Complaint (doc. 87). All three named defendants oppose the Motion (*see* docs. 91, 92), which has been briefed and is now ripe for disposition.

### I.      Relevant Background.

Plaintiff, Jasper Wood Products, LLC ("JWP"), filed its Complaint (doc. 1) against defendants, Jordan Scrap Metal, Inc. ("Jordan"), Peterman Mill Project, LLC ("Peterman"), and James Norman ("Norman") back on June 4, 2013. The Complaint alleged an assortment of state-law tort, contract, and statutory claims, arising from a fire that destroyed certain plywood manufacturing equipment (the "Equipment") owned by JWP. According to the well-pleaded allegations of the Complaint, JWP had purchased the Equipment from Norman, and such Equipment was being stored at a facility owned by Peterman, when Jasper (a contractor performing "hot work" at Peterman's mill) failed to extinguish certain materials properly at the end of the workday on December 12, 2012. The Peterman facility burned down during the overnight hours, and JWP's Equipment was a total loss. As originally formulated, JWP's eight-count Complaint was configured as follows: a bailment claim against Peterman and Norman, negligence and wantonness claims against all defendants, misrepresentation and breach of contract claims against Peterman and Norman, a breach of warranty claim against Peterman and

Norman, a claim against Jordan for violation of Alabama Code § 7-2-222,[1] and a claim against Peterman and Norman for violation of Alabama Code § 7-2-714.

In the ordinary course of this federal litigation, Magistrate Judge Cassady entered a Rule 16(b) Scheduling Order (doc. 23) on October 23, 2013. The Scheduling Order provided, in relevant part, that "Motions for leave to amend the pleadings and to join other parties must be filed not later than **December 20, 2013**." (Doc. 23, ¶ 4.)[2] At no time prior to that December 20 deadline did JWP or anyone else request relief from, or an extension of, the time for amendments or joinder. To be sure, on March 13, 2014 (nearly three months after that deadline for amending pleadings had passed), the parties submitted a Joint Motion for Amended Rule 16(b) Scheduling Order (doc. 47), requesting enlargement of certain discovery and dispositive motions deadlines because "[t]o date, the parties have not taken any depositions, instead having agreed to mediate the case at this point …. Mediation is currently set for April 1, 2014." (Doc. 47, ¶ 3.) However, nothing in the March 13 Joint Motion requested a revival of the long-lapsed period for amending the pleadings or joining additional parties, or even referenced that particular deadline.[3] At any rate, Judge Cassady denied the request to amend the Scheduling Order, explaining that "[w]hile the Court encourages settlement efforts, the parties cannot disregard the scheduling order. If the parties wished to participate in mediation before taking depositions, they should have scheduled their mediation earlier, as the Court advised." (Doc. 50, at 5.)

---

[1]     There is no Alabama statute found at § 7-2-222. It appears that JWP intends to proceed against Jordan for alleged violation of Alabama Code § 7-2-722, captioned "Who can sue third parties for injury to goods." Whatever the case may be, the Court expects plaintiff to make an appropriate clarification to this cause of action, should it wish to pursue it.

[2]     In fixing this date, Judge Cassady did not unilaterally impose a draconian or unrealistic time limit; to the contrary, he accommodated the parties' joint proposal that "[t]he parties request until December 20, 2013 (60 days after initial disclosures) to join additional parties and amend the pleadings." (Doc. 19, at 7.)

[3]     In fact, the parties attached to their Joint Motion in March 2014 a proposed Amended Rule 16(b) Scheduling Order, in which Paragraph 4 (pertaining to amendments to pleadings and joinder of parties) was reproduced verbatim from the original Scheduling Order, with the same December 20, 2013 deadline. (*See* doc. 47-1, ¶ 4.) Clearly, then, no one was seeking relief from the deadline to amend pleadings or add parties as of March 2014, even though all parties were indisputably aware of their arrangement to forestall taking depositions pending the outcome of mediation.

Ultimately, Jordan pulled out of the mediation at the eleventh hour, citing an unspecified "scheduling conflict." (Doc. 101, Exh. C.) To date, the mediation evidently has never been rescheduled, with the litigants instead focusing on discovery. (*See* doc. 54.) In late April 2014, Jordan filed a motion to extend expert disclosure deadlines, and the parties later submitted a supplemental Rule 26(f) report, once again omitting any request for relief from the deadline for amending pleadings and joining parties. (*See* doc. 62; doc. 62-1, ¶ 4; doc. 76.) On May 23, 2014, Judge Cassady entered a Supplemental Scheduling Order (doc. 79), enlarging deadlines for, *inter alia*, completion of discovery, submission of expert reports and pretrial disclosures, as well as the final pretrial conference and trial settings. The Supplemental Scheduling Order did not reopen the long-expired deadline for amending pleadings, nor is there any indication in the court file that any party requested same.

On June 19, 2014, JWP filed its Motion for Leave to File Amended Complaint. Although the Motion is vague as to what modifications are being proposed and why, JWP explains that during the course of "document production and the depositions of corporate representatives, information has come to light which necessitates the filing of the instant motion … in order to amend certain factual allegations, which were either unclear or unknown at the time of the filing of the initial Complaint." (Doc. 87, ¶ 2). Review of the Motion, as well as a side-by-side comparison of the original and proposed amended complaints, reveals that JWP's proposed modifications to its pleading include, *inter alia*, the following: (i) joinder of two additional parties plaintiff, Natron Wood Products, LLC, and Dunollie Resources, Inc., both of which are owned by Richard McDougal, who also owns JWP; (ii) correction of Jordan's name from "Jordan Scrap Metal, Inc." to "Jordan Scrap, Inc."; (iii) new factual allegations that the Louisville, Mississippi facility where JWP had planned to move the Equipment was not going to be run by JWP, but was actually going to be operated by Natron under a lease executed by Dunollie; (iv) reduction in claims for fair market value of the Equipment from $5,230,000 to $2,113,000; and (v) new lost-profit allegations in Counts I, II, III, IV, and VII, including new references to lost profits and valuation of that category of damages at $6.8 million. (*Compare* doc. 1 *with* doc. 87-1.)

The sole authority cited by JWP in support of the Motion for Leave to File Amended Complaint is Rule 15 of the Federal Rules of Civil Procedure. All defendants oppose the Motion as untimely and otherwise improper.

**II.    Analysis.**

    *A.    Rule 16(b)(4) Governs, at Least in the First Instance.*

In both its Motion and its Reply, JWP invokes the relaxed, permissive amendment standard prescribed by Rule 15(a)(2), Fed.R.Civ.P., and argues that its Motion must be granted unless defendants prove prejudice or unfair surprise. (*See* doc. 87, ¶ 3; doc. 101, at 3-4.) As all defendants point out, however, plaintiff's argument recites the wrong legal standard. A critical fact that plaintiff's filings overlook is that the original Rule 16(b) Scheduling Order fixed a deadline of December 20, 2013 for amending pleadings or joining additional parties, yet JWP did not move to amend its Complaint until fully six months later, on June 19, 2014.

The Scheduling Order deadline for amending pleadings and joining parties was neither aspirational nor advisory. Rather, the Federal Rules of Civil Procedure are clear that such deadlines "may be modified only for good cause and with the judge's consent." Rule 16(b)(4), Fed.R.Civ.P. Where, as here, a motion to amend "comes long after the deadlines for filing motions to amend established in the scheduling orders entered in this case," a plaintiff must "show good cause under Federal Rule of Civil Procedure 16(b)." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1312 (11th Cir. 2009).[4] Simply put, JWP's Motion is governed in the first instance by Rule 16(b)(4)'s "good cause" requirement, not by Rule 15(a)(2)'s "freely give leave" standard. *See Smith v. School Bd. of Orange County*, 487 F.3d 1361, 1367 (11th Cir. 2007) ("despite Smith's argument on appeal that the district court should have granted his motion to amend his complaint in accordance with the liberal amendment instructions of Rule 15(a), Smith still had to comply with Rule 16(b)'s good cause requirement because he filed his motion to amend … after the court's deadline for such motions"); *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a).").[5]

---

       [4]    *See also Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1241 (11th Cir. 2009) ("A plaintiff seeking leave to amend its complaint after the deadline designated in a scheduling order must demonstrate 'good cause' under Fed.R.Civ.P. 16(b).").

       [5]    The Eleventh Circuit has explained this principle as follows: "If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of (Continued)

Under well-settled law, the "good cause" standard prescribed by Rule 16(b) "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Sosa*, 133 F.3d at 1418 (citation and internal quotation marks omitted).[6] "This rule is strictly enforced, particularly where, as here, the nonmovant has objected to the proposed amendment as untimely under the applicable scheduling order." *Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 4870839, *1 (S.D. Ala. Sept. 12, 2013); *see also Will-Burn Recording & Pub. Co. v. Universal Music Group Records*, 2009 WL 1118944, *2 n.5 (S.D. Ala. Apr. 27, 2009) ("Particularly where a nonmovant objects to a proposed amendment as untimely under the applicable scheduling order, this Court has strictly applied the Rule 16(b) 'good cause' standard to belated amendments to the pleadings.").

## B. Application of Rule 16(b)(4) Standard.

As noted *supra*, a key feature of JWP's proposed Amended Complaint is its inclusion of Natron and Dunollie as additional parties plaintiff, along with JWP. That pleading would set forth factual allegations describing the roles of each would-be plaintiff in the contemplated Louisville, Mississippi plywood manufacturing plant to which the Equipment was to have been shipped had it not been destroyed by fire.[7] Under a Rule 16(b)(4) analysis, the obvious problem

---

Civil Procedure." *Sosa*, 133 F.3d at 1419. "Were the law otherwise, scheduling orders would be trivialized to the point of meaninglessness." *Roberson v. BancorpSouth Bank, Inc.*, 2013 WL 4870839, *1 (S.D. Ala. Sept. 12, 2013); *see also Rogers v. Hartford Life and Acc. Ins. Co.*, 2012 WL 2395194, *1 n.3 (S.D. Ala. June 22, 2012) ("[A] scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril … Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier.") (citation omitted).

[6]     *See also Romero v. Drummond Co.*, 552 F.3d 1303, 1319 (11th Cir. 2008) ("To establish good cause, the party seeking the extension must have been diligent."); *Jackson v. Odenat*, --- F. Supp.2d ----, 2014 WL 1202745, *6 (S.D.N.Y. Mar. 24, 2014) (in Rule 16(b)(4) context, "[t]he touchstone of good cause is the moving party's diligence").

[7]     These facts are relevant to JWP's claimed entitlement to $6.8 million in lost profits. Presumably, those "lost profits" would have been generated at the Louisville, Mississippi plant where the Equipment was to be installed. Under the original Complaint, however, JWP's entitlement to such lost profits may be doubtful because it appears that (i) JWP would not have owned or operated the Louisville, Mississippi facility directly; (ii) that facility would have been operated by Natron; and (iii) the lease governing that facility was executed between Dunollie and the City of Louisville. So JWP would add Natron and Dunollie (both of (Continued)

with JWP's attempt to inject Natron and Dunollie into the case now is that it has not shown (and, by all appearances, cannot show) that the amendment could not have been made prior to December 20, 2013, despite diligence by JWP. In its Motion, JWP makes hazy allusions that "additional information has come to light" during discovery relating to the roles of Natron and Dunollie as to the Louisville facility. (Doc. 87, at 2-3.) But the source of that "additional information" was not defendants; rather, it appears to have been plaintiff itself. Plaintiff did not need discovery from defendants to know that Natron was to operate the Louisville, Mississippi mill, or that the lease had been executed by Dunollie, for the simple reason that JWP, Natron and Dunollie are all owned by the same person.[8] Accordingly, plaintiff has not demonstrated good cause to amend its pleading now to add allegations concerning Natron and Dunollie that were or should have been known by JWP from the outset. *See, e.g., Kendall v. Thaxton Road LLC*, 2011 WL 3903400, \*5 (11th Cir. Sept. 7, 2011) (no good cause for untimely amendment where "the facts with which Kendall wished to amend his complaint were known to Kendall at the time he filed his initial complaint").[9]

---

which appear to be related to JWP or, at least, controlled by the same person who owns JWP) as additional parties plaintiff to shore up these claims for lost profits. By adding two new plaintiffs with a purported interest in the Louisville operations, those allegations appear designed to block defendants from challenging whether, as to that category of damages, JWP is a real party in interest (since it never owned, operated or was responsible for the facility where the Equipment would have been used). In mapping out this explanation for the proposed amendment, JWP does not concede that it is not the real party in interest as to lost profits damages. The standing issue not having been squarely presented for disposition at this time, the Court makes no findings and expresses no opinions as to whether JWP, itself, would or would not be eligible to recover lost profits relating to the destroyed Equipment.

[8] Allegations in the proposed Amended Complaint appended to the Motion confirm this fact. Indeed, that pleading specifies that "JWP is wholly owned by its Managing Member, Richard McDougal," that "Natron is wholly owned by its Managing Member, Richard McDougal," and that "Richard McDougal is the sole owner/shareholder of Dunollie." (Doc. 87-1, ¶¶ 1-3.) Logic and common sense dictate that McDougal must have known (or at least should have known, without discovery from defendants) which of his wholly-owned entities were involved in the Louisville, Mississippi facility, and what the nature of that involvement was. Certainly, plaintiff has not attempted to argue, allege or prove otherwise.

[9] *See also Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp.2d 724, 735 (S.D.N.Y. 2012) ("[T]he good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline.") (Continued)

Rather than establishing diligence, plaintiff's filings on the Motion for Leave to Amend argue that defendants would not be prejudiced by the proposed amendment. (*See* doc. 87, at 4; doc. 101, at 4-6.) However, "[d]iligence, not lack of prejudice, is the touchstone of the Rule 16(b)(4) inquiry." *Roberson*, 2013 WL 4870839, at *2 (citations omitted); *see also De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672-73 (S.D. Fla. 2012) ("diligence is the key to satisfying the good cause requirement"); *Southern Track & Pump, Inc. v. Terex Corp.*, 722 F. Supp.2d 509, 521 (D. Del. 2010) ("the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party") (citation omitted). Without a threshold showing of diligence to warrant modification of the Scheduling Order under Rule 16(b), whether defendants would or would not be prejudiced by the amendment (a relevant criterion under Rule 15(a)(2)) is inconsequential.

In its reply brief, JWP again incorrectly asserts that the Rule 15(a) standard governs its Motion (doc. 101, at 3-4), but then (without acknowledging Rule 16(b)(4)) argues that "the testimony of Steve Jordan clearly establishes any justification or 'good cause' which may be required of JWP in seeking to amend its Complaint" (*id.* at 8). This assertion does not withstand scrutiny. Steve Jordan (who is apparently the owner of defendant Jordan Scrap, Inc.) was deposed on April 1, 2014, several months after the deadline for amending pleadings had passed. (*See* doc. 101, Exh. E.) At that time, Steve Jordan did not testify about the relationship between and among JWP, Natron and Dunollie as it relates to the Louisville, Mississippi plywood production facility; therefore, his deposition testimony certainly could not establish "good cause" for that aspect of the proposed amendment. Instead, JWP would rely on Steve Jordan's

---

(citation omitted); *Ross v. American Red Cross*, 2014 WL 289430, *8 (6th Cir. Jan. 27, 2014) ("A plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline."); *see generally Korrow v. Aaron's, Inc.*, --- F.R.D. ----, 2014 WL 3040802, *11 (D.N.J. June 30, 2014) ("Defendant bears the burden of showing good cause under Rule 16 to persuade the Court that, despite its diligent efforts, it was unable to know until long after … its deadline for seeking leave to amend its pleading, that it had a counterclaim against Korrow").

deposition to evince good cause for the untimeliness of the proposed amendment as it relates to claims of lost profits against defendant Jordan.[10]

On that point, JWP maintains that this deposition "provided JWP with additional facts (testimony) in support of its claim for lost profits against Jordan – Jordan's admission that he was aware that the subject equipment was not to be scrapped," but was to be moved elsewhere. (Doc. 101, at 7-8.)  This argument is unpersuasive for at least two independent reasons.  First, the deposition excerpts supplied by JWP do not support the proposition that Steve Jordan knew what JWP intended to do with the Equipment.  Upon questioning by plaintiff's counsel, Steve Jordan pointedly testified, "So I don't know what they were going to do with them is what I'm saying." (Doc. 101, Exh. E, at 247.)   He then said, "I didn't know anything but I guessed that they were going to take it and use it." (*Id.*)  For the witness to testify that he "guessed" (but did not know) that JWP intended to use the Equipment somewhere else is hardly proof of knowledge of JWP's intentions.  Second, and more fundamentally, plaintiff does not explain why evidence of Steve Jordan's subjective knowledge or understanding was needed before JWP could plead a claim for lost profits against defendant Jordan.  While JWP appears to imply that such knowledge is an essential element of proof for it to recover lost profits, it offers no showing, discussion or explanation to that effect, leaving the Court to guess why evidence of what Steve Jordan guessed might happen to the Equipment matters one whit.  On this fragmentary, unexplained rationale, the Court cannot find that Steve Jordan's April 1, 2014 deposition supplies the necessary good cause for JWP's requested modification of the Scheduling Order deadline for amending pleadings.[11]

---

[10]     The parties disagree vehemently as to whether the original Complaint actually encompassed claims against defendant Jordan for lost profits. (*Compare* doc. 91, at 2-5 *with* doc. 101, at 4-6.)  This is neither the time nor the place to rule definitively on whether a lost profits claim was or was not joined against Jordan in the original Complaint; instead, it suffices for purposes of this Order to note that the proposed Amended Complaint would advance new specific allegations directed at Jordan in Counts II, III and VII, demanding lost profits in the amount of $6.8 million.

[11]     A couple of additional defects in plaintiff's reliance on the Steve Jordan deposition transcript warrant mention.  For starters, even if that testimony really did hold the key to a previously unavailable lost profits claim against Jordan, plaintiff does not explain why it could not have taken this witness's deposition until three and a half months after the deadline for amending pleadings had expired. (As discussed *infra*, a voluntary agreement not to pursue (Continued)

Nor does plaintiff strengthen its claims for relief by attempting to shift the blame to defendants for its own noncompliance with Scheduling Order deadlines. In its reply, JWP takes defendants to task for "omit[ting] significant facts establishing their contribution to approximately ten (10) months of the twelve (12) month delay." (Doc. 101, at 2.) In plaintiff's words, "Defendants completely ignore the fact that the parties agreed to mediate this matter prior to conducting formal discovery" and further overlook Jordan's "unilateral, unexplained, eleventh-hour cancelation of the April 1, 2014 mediation." (*Id.* at 7.) But these facts do not favor amendment of the pleadings. Taken at face value, plaintiff's contention is that the parties basically agreed to do nothing from the time of entry of the Rule 16(b) Scheduling Order in October 2013 until the scheduled mediation date of April 1, 2014. By assenting to such an arrangement, JWP allowed various Scheduling Order deadlines to expire without conducting any formal discovery. Whatever else may be said about plaintiff's decision, it does not exhibit the sort of diligence required by Rule 16(b)(4).[12] Nor does the fact that the April 1 mediation never

_____

discovery pending mediation does not equate to good cause.) Plaintiff's dilatory pursuit of discovery as to this witness does not constitute the necessary diligence under Rule 16(b)(4). Moreover, plaintiff glosses over the fact that it waited 79 days <u>after</u> Steve Jordan's deposition before seeking leave to amend the Complaint. Surely, a plaintiff acting with reasonable diligence would not have waited more than two and a half months to seek leave to amend the pleadings based on revelatory information unearthed in a deposition. The timing of the Steve Jordan deposition, and of plaintiff's filing of a Motion to Amend based on that deposition, belies any inference of diligence.

[12]     A more generalized way to make this point is that delays attendant to settlement negotiations do not furnish good cause for modifying scheduling orders pursuant to Rule 16(b)(4). *See, e.g., Gerawan Farming, Inc. v. Rehrig Pacific Co.*, 2013 WL 645741, *5 (E.D. Cal. Feb. 21, 2013) ("settlement negotiations are not good cause to modify a Scheduling Order"); *Rybski v. Home Depot USA, Inc.*, 2012 WL 5416586, *2 (D. Ariz. Oct. 17, 2012) ("district courts have concluded that settlement conferences or discussions do not constitute good cause to modify a scheduling order"); *Oliver v. M/V BARBARY COAST*, 2012 WL 642342, *1 (S.D. Ala. Feb. 28, 2012) ("the pursuit of settlement – alone – is generally not good cause to justify the extension of deadlines in a Rule 16(b) scheduling order"); *Home Design Services, Inc. v. Trumble*, 2010 WL 1435382, *10 (D. Colo. Apr. 9, 2010) (where plaintiff deferred discovery costs in anticipation of productive settlement conference, observing that "[w]hile I can appreciate the pragmatism underlying such a strategy, counsel's misplaced optimism does not equate to good cause under Rule 16(b)"); *United Stars Industries, Inc. v. Plastech Engineered Products, Inc.*, 2007 WL 5462421, *1 (W.D. Wis. Feb. 14, 2007) ("Plaintiff has not shown good cause for the late amendment, only that it preferred to engage in settlement negotiations and let the (Continued)

happened (apparently because of the unilateral act of one defendant) absolve JWP of the natural, foreseeable consequences of the risk it assumed in allowing crucial Scheduling Order deadlines to go by the boards while it sat back waiting for mediation. *See generally Secord v. Cockburn*, 747 F. Supp. 779, 786 (D.D.C. 1990) ("where a party fails to pursue discovery in the face of a court-ordered cutoff, as here, that party may not be heard to plead prejudice resulting from his own inaction").

Simply put, the parties' agreement to take no discovery for nearly half a year after the Rule 16(b) Scheduling Order was entered in no way constitutes good cause for extending long-expired Scheduling Order deadlines simply because things did not work out as plaintiff had hoped. At any rate, as discussed *supra*, plaintiff has not shown that the discovery process belatedly commencing on April 1, 2014 yielded necessary information on which its proposed Amended Complaint is predicated; therefore, the issue of defendants' complicity in the timing of discovery is nothing more than a red herring.

### C.     *The Rule 17 Wrinkle.*

In its Reply, JWP argues for the first time that the proposed amendment should be allowed pursuant to Rule 17, Fed.R.Civ.P. (*See* doc. 101, at 8-10.) But plaintiff's Motion to Amend offers not a whiff of a suggestion that it is proceeding under any authority other than Rule 15. The Rule 17 theory expressed in plaintiff's Reply is a new argument raised for the first time in a reply brief, and therefore improper. *See, e.g., Adams v. Homeward Residential, Inc.*, 2014 WL 460936, *5 n.10 (S.D. Ala. Feb. 5, 2014) ("Federal courts generally do not consider new arguments presented for the first time in a reply brief."); *Gross-Jones v. Mercy Medical*, 874 F. Supp.2d 1319, 1320 n.8 (S.D. Ala. 2012) ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply.").

Besides, the text of Rule 17 does not support plaintiff's bald statement that the rule "actually requires that a plaintiff be allowed to amend its pleadings in order to add the real party in interest." (Doc. 101, at 9.) The cited passage of the rule specifies that an action may not be dismissed "for failure to prosecute in the name of the real party in interest until, after an

---

deadlines go by. Although this court encourages settlement, it expects counsel to observe the deadlines set by the court.").

objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Rule 17(a)(3), Fed.R.Civ.P. At this time, the Court does not have before it a motion to dismiss for failure to prosecute in the name of the real party in interest. Furthermore, plaintiff has made no showing and advanced no legal argument that the provisions of Rule 17(a)(3) would allow it to disregard Scheduling Order deadlines with impunity or override the "good cause" requirement of Rule 16(b)(4). To date, no party to this action has addressed any of (i) the timeliness of any "real party in interest" challenge that may now be interposed; (ii) the interplay between and among Rule 16(b)(4), Rule 17(a)(3) and Rule 19 as they may relate to any proposed joinder of additional plaintiffs at this time; or (iii) the propriety of a Rule 15 amendment, versus a "ratification," a Rule 19 joinder, or a Rule 25 substitution to make any correction to the applicable real party in interest. And plaintiff has not explained how any failure on its part to identify the real party in interest from the outset of these proceedings was the sort of honest mistake that might render it eligible for relief under Rule 17(a)(3). *See generally Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 563 (3rd Cir. 2008) ("Rule 17(a) is the codification of the salutary principle that an action should not be forfeited because of an honest mistake") (citation omitted).[13]

With none of these matters having been developed in the parties' briefing on the existing Rule 15 Motion, this Court will not travel so far afield from plaintiff's original motion by addressing such issues as these, that the parties have not properly presented or briefed.

## III. Conclusion.

JWP is asking that the Rule 16(b) Scheduling Order's deadline for motions to amend pleadings and add parties be modified some six months after expiration, to allow it name two new plaintiffs and alter its factual allegations and claims for damages. Plaintiff has not shown "good cause" to warrant such relief, and indeed has not directly addressed the applicable Rule

---

[13]      In fact, plaintiff's position has been (and apparently is still) that there was no mistake, as JWP remains adamant "that it is the real party in interest." (Doc. 87, at 3.) Elsewhere, plaintiff insists that "as a legal matter, the proposed amendment has no effect on the merits of JWP's claim for lost profits." (*Id.* at 4.) So plaintiff continues to argue out of one side of its mouth that JWP is entitled to recover lost profits, even as it contends from the other side of its mouth that Rule 17(a) requires the Court to grant this amendment to allow joinder of Natron and Dunollie as the real parties in interest for the lost profits claim. Plaintiff cannot have it both ways.

16(b)(4) standard at all. The orderly, efficient passage of lawsuits through federal courts demands that the Federal Rules of Civil Procedure be followed, and that parties work diligently to adhere to scheduling order deadlines. Yet plaintiff's dilatory amendment would subvert these case-management objectives and render scheduling order deadlines toothless by allowing noncompliance to be neatly sidestepped long after the fact. Granting plaintiff's motion would be tantamount to endorsing such a result; therefore, the Motion for Leave to File Amended Complaint (doc. 87) is **denied**, with one exception.

All parties apparently concur that the proper, correct name of defendant Jordan is "Jordan Scrap, Inc." rather than "Jordan Scrap Metal, Inc."[14] Because everyone is in agreement as to the propriety of this modest correction, the Motion to Amend is **granted in part** pursuant to Rule 15(b)(2), insofar as it relates to the name of defendant Jordan. The defendant originally named in the pleadings as "Jordan Scrap Metal, Inc." is to be referenced hereinafter for all purposes in this action (including in court filings, in the style of the case, and at trial) by its correct name, "Jordan Scrap, Inc."

DONE and ORDERED this 25th day of July, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[14]     In its response to the Motion for Leave to Amend, Jordan affirmatively represents that it "has no issue with the correction of its name to 'Jordan Scrap, Inc.'" (Doc. 91, at 2 n.1.)